UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

THARON BINGHAM,  )
              )
    Plaintiff,  )   Case No. CV 10-1683 AJW
              )
    v.         )   MEMORANDUM OF DECISION
              )
MICHAEL J. ASTRUE,  )
Commissioner of the Social  )
Security Administration,  )
              )
    Defendant.  )
_____)

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an SSI benefits application alleging disability due to mood swings, depression, hyperactivity, anxiety disorders, and affective mood disorder. Plaintiff's amended alleged date of onset of disability is November 28, 2007. [JS 2; Administrative Record ("AR") 27, 51-55].

In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") concluded that plaintiff was not disabled because he did not have a severe physical or mental impairment or combination of impairments for twelve consecutive months. [AR 9-14].

].                    **Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Severity finding**

Plaintiff contends that the ALJ erred in finding that plaintiff did not have a severe mental impairment.

A medically determinable impairment or combination of impairments is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)). To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); see Webb, 433 F.3d at 686. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making

a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2.

The ALJ noted that the record concerning the period on and after November 28, 2007 revealed no objective findings suggesting that plaintiff was unable to perform basic work activities. There was no evidence of any physical impairment; however, the record contained evidence of some treatment for mental symptoms during the relevant period. Plaintiff had a history of extensive incarceration since 1986, primarily for offenses arising from drug possession and sale, weapons possession, robbery, and manslaughter, for which plaintiff served ten years of a fifteen-year sentence. Plaintiff was arrested again in 2006 for marijuana possession with intent to sell. He was paroled on November 24, 2007. Plaintiff alleges that he became disabled four days later, when he filed his SSI benefits application. [AR 12, 27-31, 33].

Plaintiff's California state prison medical records indicate that after his incarceration in 2006, he was treated for mood swings and depression, but that his symptoms improved with use of medication. [AR 12, 154-201]. In February and March 2007, his diagnosis was history of adjustment disorder with anxiety and history of cannabis dependence. [AR 164-165]. In February and March 2007, plaintiff was assessed as stable on his current medication, Seroquel, which can be prescribed for depression or bipolar disorder.[1] [AR 169-170].

Plaintiff's diagnosis was unchanged according to progress notes from April 2007 and May 2007. [AR 162, 165]. Plaintiff complained that he was having a hard time waking up early for a job assignment on Seroquel, so he underwent a trial off medication after his April visit. [AR 165]. In May 2007, he reported an increase in irritability and stress. He was started on a trial of VPA ER (extended release sodium valproate), a generic mood stabilizer similar to Depakote, but that caused gastrointestinal upset, so he was started on Trileptal (oxcarbazepine)[2], another mood stabilizing drug. [AR 160]. In August 2007, plaintiff

---

[1] See *http://www.seroquelxr.com/* (last visited April 26, 2010).

[2] See *http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000176/* (last visited April 26, 2011).

3

reported that Trileptal gave him a skin rash, but that he had continued to take it.[AR 156, 158]. Trileptal was discontinued, and he was prescribed hydroxyzine for anxiety and lithium. [AR 156, 158-160]. Plaintiff subsequently said that Trileptal had given him diarrhea and that lithium had given him a rash. [AR 156]. Nonetheless, plaintiff was restarted on Trileptal and it appears that plaintiff agreed to take it as prescribed. [See AR 155-156].

In September 2007, plaintiff told a prison social worker that he was "doing well." [AR12, 157]. He discussed his plans for parole and said he would continue on his medication at the parole outpatient clinic. [AR 157]. In October 2007, plaintiff's mental status examination findings were normal. There was "[no] evidence suggestive of a major mood disorder [at] this time." [AR 12, 156].

In a discharge examination report dated November 15, 2007, plaintiff was given a current diagnosis of adjustment disorder with anxiety and cannabis dependence. [AR 12, 155]. His current medication was Trileptal (oxcarbazepine) 300 milligrams twice daily. Under "Target Problems, Compliance, Side Effects, Effectiveness" was the notation "Mood D.O. [disorder] Mood stabilizer." Plaintiff was "pleasant during interview." He was given a Global Assessment of Function ("GAF") score of 67. [AR 12, 155]. A score of 61 through 70 on the GAF scale denotes mild symptoms, such as depressed mood or mild insomnia, or some difficulty in social, occupational, or school functioning, such as occasional truancy or theft within the household, but indicate that "the subject is generally functioning pretty well . . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)).

In a section entitled "Clinical Summary and Recommendation," the clinician noted that plaintiff had been doing a total of 500 push-ups a day and expressed interest in working in a warehouse after release, which "would be consistent with strength in upper body." [AR 12, 155]. Plaintiff was rational, exhibited clear thought process and content, and had a realistic plan for parole. However, his self esteem "seemed low and he did not think highly of himself. He would benefit from cognitive therapy upon release." [AR 155]. The ALJ permissibly concluded that plaintiff's benign discharge report and the limited findings in his pre-release treatment reports showed no severe impairment upon his release from prison, notwithstanding that plaintiff alleged that he became disabled, and applied for SSI benefits, a few days later.

The ALJ also considered plaintiff's post-release treatment. [AR 13]. Plaintiff was evaluated at a

California Department of Corrections and Rehabilitation parole outpatient clinic ("POC") on January 29, 2008. His diagnosis was major depressive disorder, moderate recurrent. [AR 221]. Plaintiff was given a GAF score of 75, denoting symptoms that are transient and expectable reactions to psychosocial stressors, representing no more than a slight impairment in social, occupational, or school functioning. See DSM-IV at 27-36. Stressors noted were "parole, homelessness." He was referred for follow-up treatment at the POC. [AR 221-222].

In May 2008, Dr. Sodha, a psychiatrist, concluded that plaintiff was "doing well on meds no side[]effects." [AR 13, 240]. Plaintiff was cooperative, his thinking was intact, his insight and judgment were fair, and he had no hallucinations or delusions. [AR 240].

On June 9, 2008, Dr. Weisman, a psychologist, noted that plaintiff's medication had been changed and his paranoia reduced. Plaintiff was working on music production. [AR 13, 239]. On June 18, 2008, Dr. Feldman, a psychiatrist, observed that plaintiff's mood was "more stable." [AR 238]. In August 2008, Dr. Weisman discussed "job leads" during plaintiff's visit. [AR 236].

Plaintiff was arrested again in October 2008 for possession of marijuana for sale and was incarcerated until July 2009. [AR 13, 232-234]. He was released from prison without medications. A POC evaluation on July 17, 2009 revealed that plaintiff was alert, cooperative, and oriented. His mood was euthymic with congruent affect. Insight and judgment were fair. He denied hallucinations and suicidal ideation. He endorsed subjective symptoms of depression, trouble sleeping, mood swings, and irritability. Plaintiff said he would come in to see a POC psychiatrist the following week. He was offered an introduction to the California Department of Rehabilitation but "was not interested at this time. In process of applying for [SSI benefits] through a law office (Bill LaTour) . . . ." [AR 13, 232]. Plaintiff was given education on coping and relaxation skills and community resources. [AR 232].

Additional progress notes from July 2009 and August 2009 indicate that plaintiff said he was feeling better, less depressed, and less irritable on medication. [AR 13, 230]. He was taking care of appointments and "appeared motivated to stay on track." [AR 230]. His social worker discussed housing options and other services, including vocational rehabilitation. [AR 229-230]. No abnormal mental findings were noted. [AR 229-231].

As the ALJ found, plaintiff's prison and POC records indicated that his symptoms improved with

medication and that he had been doing well on medication without significant side effects during the relevant period. See Warre v. Comm'r of the Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005) ("Impairments that can be controlled effectively with medication are not disabling."). Plaintiff's treatment reports during the relevant period do not document significant objective or clinical abnormalities due to either plaintiff's mental symptoms or side effects from his medications. The mere fact that plaintiff had a diagnosable mental condition is not enough. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (noting that at step two, a claimant "must show more than the mere presence of a condition or ailment") (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). Consistent with plaintiff's benign mental status examination findings and minimal complaints, his treating physicians gave him GAF scores indicating no more than slight or mild symptoms and limitations. None of plaintiff's treating sources indicated that he was disabled. Instead, they encouraged him to consider "job leads" and vocational rehabilitation. Substantial evidence supports the ALJ's conclusion that the medical evidence did not demonstrate the existence of an impairment that more than minimally limited plaintiff's ability to perform basic work activities on or after his alleged onset date of November 28, 2007.

Plaintiff contends that the opinion of psychologist Michael Franc supports the conclusion that plaintiff had a severe mental impairment. Dr. Franc completed a "Work Capacity Evaluation (Mental)" checklist on indicating that plaintiff had moderate, marked, and extreme functional limitations that would cause him to miss three or more days of work per month. He also indicated that plaintiff was not a malingerer and that his impairment had lasted, or would last, at least twelve months. [AR 244-245].

Dr. Franc's opinion was dated December 8, 2009 and was submitted on December 23, 2009. Therefore, it was not before the ALJ when he rendered his December 9, 2009 decision. The Appeals Council considered Dr. Franc's opinion and gave it no weight because it contained "no discussion, rationale, or clinical findings to support these limitations." [AR 1-4].

A reviewing court "consider[s] on appeal both the ALJ's decision" and "additional material submitted to the Appeals Council." Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) (citing Bates v. Sullivan, 894 F.2d 1059, 1063-64 (9th Cir.1990) and 20 C.F.R. § 404.970(b)). Dr. Franc's conclusory opinion contains no diagnosis, mental status examination findings, clinical observations, or any other supporting findings. The Appeals Council properly disregarded that opinion, which provides no basis for

overturning the ALJ's decision. Cf. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 & n.3 (9th Cir. 2004) (upholding the ALJ's rejection of an opinion that was "conclusionary in the form of a check-list" and lacked supporting clinical findings). Even if that fundamental defect could be ignored, Dr. Franc completed the form after the November 16, 2009 hearing, just one day before the ALJ issued his opinion. Thus, there is little chance it would alter the ALJ's analysis with respect to period preceding the date of his decision. See Sanchez v. Sec'y of Health & Human Servs., 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence indicating deterioration in the claimant's condition after the hearing was not material to the ALJ's decision denying benefits because it was not probative of the claimant's condition at or before his disability hearing).

Plaintiff's contention that the ALJ erred in finding that plaintiff had no severe impairment lacks merit.

**Type, dosage, and side effects of prescribed medications**

Plaintiff argues that the ALJ improperly disregarded evidence that plaintiff's current medications cause marked drowsiness and other symptoms, and that his past medications caused a rash, diarrhea, and other adverse effects.

An ALJ must take into account the type, dosage, effectiveness, and adverse side effects of any medication when evaluating a claimant's subjective symptoms and ability to work. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3; Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ did not err in disregarding "passing mentions" of side effects in the medical records where "there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work").

The ALJ did not err in evaluating the evidence regarding medication side effects. As noted above, before his alleged onset of disability, plaintiff complained to his prison doctors about side effects from his medications, including a rash, diarrhea, and difficulty getting up in the morning. Plaintiff's medications were changed in response to those complaints. At the time plaintiff was released from prison, which is when he alleges he became disabled, he was taking oxcarbazepine (Trileptal) as prescribed despite his earlier complaints that it caused a rash. [AR 155-156]. His prison discharge medical report indicated that he was allergic to lithium and Vistaril (hydroxyzine), and that those drugs had been discontinued, but not to

oxcarbazepine. [AR 155].

In any event, oxcarbazepine was discontinued by January 31, 2008, when Dr. Sodha of the POC prescribed Lexapro (escitalopram), an antidepressant, anti-anxiety drug[3], and Geodon (ziprasidone HCl), a mood stabilizer[4]. [AR 224]. The ALJ noted that in May 2008, Dr. Sodha wrote that plaintiff reported no side effects from his medications. [AR 13, 240].

During the hearing, plaintiff testified that he was taking Lexapro, Geodon, and Benstrofin (phonetic). [AR 38, 44]. Plaintiff agreed when asked about a treatment report "indicating you were doing pretty well on your medications," and then qualified that by saying he had problems with his medication "off and on." [AR 33]. Plaintiff testified that he slept about four hours during the day and around twelve hours a night. [AR 37]. He said that his medications made him feel sleepy and unable to function, and that he discussed it with his doctor, who recently had made a change or adjustment in plaintiff's medications as a result. [AR 37-38, 44-45]. Plaintiff also testified, however, that his medications did not prevent him from working a prison job. He testified that he liked working with his hands and had held prison jobs throughout his periods of incarceration. [AR 46]. Plaintiff explained that "even while I was taking my meds inside the prison, they still require me to work. So I'm not saying I can't work and none of that. And I would love to work . . . . I've been in jail all my life. I don't know nothing to . . . better myself." [AR 46].

The ALJ permissibly concluded that the record did not contain credible evidence of significant side effects from plaintiff's medication.

**Credibility finding**

Plaintiff contends that the ALJ improperly rejected plaintiff's subjective symptom testimony.

During the hearing, plaintiff testified that he had been in jail for most of his adult life, was currently on parole, and had not worked for the past fifteen years. [AR 28-30]. Plaintiff said that he could not work because he had problems being around people, felt sleepy during the day and could not function adequately due to his medications, and felt that somebody might try to hurt him or might be out to get him because he had killed somebody in a gang incident. [AR 31, 36-39]. Plaintiff said that he got frustrated with people,

---

[3] See *http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000214/* (last visited April 26, 2011).

[4] See *http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001070/* (last visited April 26, 2011).

8

isolated himself, could be "moody and nervous," sometimes had outbursts of anger, and had lost interest in things he used to do before. [AR 41-44]. He also testified that he had other problems that interfered with his ability to work, such as being busy with appointments and a lack of job skills. He acknowledged that he had not really been trying to find a job, and he was "not saying [he] can't work . . . .". [AR 31-32, 46].

The ALJ is required to consider the claimant's subjective symptoms in making a severity determination if the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, 1996 WL 374181, at *2. Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that plaintiff did not have a medically-determinable severe mental or physical impairment. Even assuming that plaintiff produced objective evidence of an underlying impairment that is "reasonably likely" to cause some degree of mental functional limitation, the ALJ discharged his obligation to provide specific, cogent reasons for disregarding plaintiff's subjective testimony.

First, the ALJ noted that absence of objective or clinical findings corroborating the alleged severity of plaintiff's subjective complaints of severe or disabling mental symptoms or medication side effects. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Second, the ALJ permissibly inferred that plaintiff had "a general lack of motivation to work, which

has been nurtured by years of incarceration since age 18." See 20 C.F.R. §§ 416.929(a), (c)(3) (stating that the Commissioner will consider a claimant's efforts to work and prior work record in evaluating symptoms); SSR 96-7p, 1996 WL 374186, at *5 (stating that adjudicator may consider evidence about the claimant's "prior work record and efforts to work"); e.g, Thomas, 278 F.3d at 958-959 (holding that the ALJ properly considered the claimant's "extremely poor work history" in discrediting her testimony); Schaal v. Apfel, 134 F.3d 496, 502 (2nd Cir. 1998)(explaining that a poor work history may be considered in evaluating a claimant's credibility). That inference was supported not only by plaintiff's history of incarceration, but by his testimony that he had worked consistently in prison when required to do so to earn a release date, notwithstanding his alleged mental symptoms or use of psychiatric medications, and his acknowledgment that he remained able to work but had not attempted to find a job. [AR 32, 46].

Third, the ALJ reasoned that plaintiff's "recent and past history of incarceration for drug possession and sales suggests sufficient mental organization and capacity for profit and gain, albeit illegal, despite his alleged mental symptoms." [AR 13]. That inference was a permissible one and supported the ALJ's rejection of plaintiff's allegedly disabling subjective mental symptoms. Cf. Corrao v. Shalala, 20 F.3d 943 (9th Cir. 1994) (holding that illegal activity can constitute substantial gainful activity for purposes of the social security disability determination); Hardaway v. Chater, 21 F.Supp.2d 1138, 1149 (C.D. Cal. 1996) (holding that the claimant's illegal drug-procurement activities were substantial gainful activity because they involved initiative, organization, and physical and mental exertion), aff'd, 133 F.3d 927 (9th Cir. 1998).

The ALJ articulated specific, clear, and convincing reasons for finding that plaintiff's subjective complaints did not establish the existence of a severe impairment.

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the Commissioner's decision is **affirmed.**
**IT IS SO ORDERED.**

April 27, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge